

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )       Case No. 18- 5**4** -**M**
INFORMATION ASSOCIATED WITH )
MARYW@AEROPLATECORP.COM, THAT IS STORED )
AT PREMISES CONTROLLED BY GODADDY.COM, )
LLC.

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See ATTACHMENT A

located in the _____ ~~District of~~ _____ , there is now concealed *(identify the person or describe the property to be seized):*
See ATACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

   ☑ evidence of a crime;

   ☐ contraband, fruits of crime, or other items illegally possessed;

   ☐ property designed for use, intended for use, or used in committing a crime;

   ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1031 | Major fraud against the United States |

The application is based on these facts:
See AFFIDAVIT

   ☑ Continued on the attached sheet.

   ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
   under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Steven C. Baker, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/17/18

City and state: Philadelphia, PA

*Judge's signature*

THOMAS J. RUETER, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
MARYW@AEROPLATECORP.COM,
THAT IS STORED AT PREMISES
CONTROLLED BY GODADDY.COM, LLC.

Case No. 18 54-M

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Steven C. Baker, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a search warrant for

information associated with a certain account, 'maryw@aeroplatecorp.com', that is stored at

premises controlled by GoDaddy.com, LLC, an email provider headquartered at 14455 N.

Hayden Road, Scottsdale, AZ 85260. The information to be searched is described in the

following paragraphs and in Attachment A. This affidavit is made in support of an application

for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require

GoDaddy.com to disclose to the government copies of the information (including the content of

communications) further described in Section I of Attachment B. Upon receipt of the

information described in Section I of Attachment B, government-authorized persons will review

that information to locate the items described in Section II of Attachment B.

2.    I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and

have been since January 2006. I am currently assigned to the FBI White Collar Crimes Branch

in Philadelphia, Pennsylvania, whose mission includes the investigation of crimes involving

Fraud Against the Government. During that time, I have been involved in fraud and public

corruption investigations which involved criminal violations, including 18 U.S.C §§ 1031 (Major

fraud against the United States). I am a law enforcement officer of the United States within the

meaning of 18 U.S.C §§ 2510(7), in that I am empowered by law to conduct investigations and

to make arrests for federal felony offenses. Based on my experience and training, I have found

that these crimes may involve/utilize computers, email accounts, cloud computing services, and

the Internet. Based upon my training and experience, I am familiar with the means by which

individuals use computer and information networks such as the Internet to commit various

criminal offenses, and I have participated in the execution of searches and seizures pursuant to

warrants authorizing the seizure of evidence related to computer crimes.

3.      This affidavit is intended to show merely that there is sufficient probable cause

for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit,

there is probable cause to believe that a violation of 18 U.S.C. §§ 1031 has been committed by

MARY CRAIG WILLIAMS using, among other means, the email account

maryw@aeroplatecorp.com, during the period from in or about July 2010 until in or about March

2013. There is also probable cause to search the information described in Attachment A for

evidence and instrumentalities of these crimes further described in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) &

(c)(1)(A). Specifically, the Court is "a district court of the United States that has jurisdiction

over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

2

## BACKGROUND

6.     On October 31, 2017, MARY CRAIG WILLIAMS ("WILLIAMS"), doing business as Aeroplate Corp. ("Aeroplate"), was indicted on one count of violating 18 U.S.C. §§ 1031 (Major fraud against the United States).

7.     Aeroplate, based in Fresno, California, was a general construction contractor specializing in commercial and industrial building additions and renovations. Aeroplate contracted with federal government agencies.

8.     WILLIAMS was the majority owner and CEO of Aeroplate. WILLIAMS was also the "Contracts Administrator," responsible for all federal government contracts at Aeroplate.

9.     The United States Department of Veterans Affairs ("VA") was an agency of the United States. Among other things, the VA operated the Veterans Affairs Medical Center in Philadelphia, which provided health care to veterans. On or about July 30, 2010, the VA contracted with Aeroplate in contract VA 244-C-1453, to renovate the 1st and 2nd floors and small addition at the Community Living Center ("CLC") at 3900 Woodland Avenue, Philadelphia PA.

10.     The contract required that Aeroplate submit performance and payment bonds to the VA prior to Aeroplate receiving a Notice to Proceed. The contract and the regulations permitted Aeroplate to seek reimbursement from the VA for the amount of the premium paid for the performance and payment bonds, after Aeroplate provided evidence of full payment of the bond premium to the surety.

11.     The value of this contract exceeded $1,000,000 in fees from the United States to Aeroplate. Between November, 2010 and January, 2012, the United States paid Aeroplate approximately $3,715,188.53 for services under the contract.

3

12.    From in or about July, 2010 through and including in or about January, 2012, in the Eastern District of Pennsylvania, and elsewhere, WILLIAMS knowingly devised and intended to devise a scheme to defraud the United States and to obtain money and property of the United States, by knowingly false and fraudulent pretenses, representations, and promises.

13.    It was the object of the scheme that WILLIAMS fraudulently obtained payments from the VA to Aeroplate. It was a part of the scheme that WILLIAMS, on behalf of Aeroplate, entered into contract VA 244-C-1453 with the VA.

14.    WILLIAMS, on behalf of Aeroplate, requested payments under the contract for costs that Aeroplate had not actually incurred, including payment of bond premiums.

15.    WILLIAMS, on behalf of Aeroplate, fraudulently represented to the VA that Aeroplate had paid bond premiums and was entitled to reimbursement under Federal Acquisition Regulation (FAR) 52-232-5(g).

16.    On or about November 12, 2010, WILLIAMS, on behalf of Aeroplate, sent correspondence to the VA contracting officer seeking reimbursement for a bond premium in the amount of $532,509.00. In support of the reimbursement, WILLIAMS made false claims about payment of the bond premium and included documents that purported to be copies of cancelled checks and a cashier's check purporting to show full payment of the bond premium.

17.    On or about November 13, 2010, WILLIAMS, on behalf of Aeroplate, sent invoices to VA financial services seeking reimbursements totaling $532,509.00 for the bond premium. WILLIAMS falsely claimed the invoices were in accordance with the terms of the contract.

18.    On or about November 23, 2010, VA sent payments totaling $532,509.00 to Aeroplate for reimbursement of the bond premium.

4

19.     In total, WILLIAMS, on behalf of Aeroplate, fraudulently obtained approximately

$3,715,188.53 from the United States through this scheme.  All in violation of 18 U.S.C. §§

1031.

## USE OF EMAIL COMMUNICATIONS

20.     During the course of this investigation, I have determined through a review of

subpoenaed records, as well as the records produced by the VA and Aeroplate during a civil

matter, that WILLIAMS utilized an Aeroplate email account, maryw@aeroplatecorp.com, to

conduct business with the VA.  Specifically, WILLIAMS used this email account to

communicate with VA personnel, other Aeroplate employees, and the Individual Surety

("Individual Surety") for Aeroplate, about various aspects of the CLC project, to include, but not

limited to, invoicing the VA, payments to vendors, scheduling, work progress, and payment and

bonding.

21.     For example, on or about August 17, 2010, WILLIAMS, using email account

maryw@aeroplatecorp.com, sent an email to the VA contracting officer with a "signed

amendment 2 for Community Living Center," and inquired about proceeding ahead.  On or about

August 24, 2010, the VA contracting officer responded to maryw@aeroplatecorp.com advising

that she was "just waiting for Engineering go ahead [sic].  That should be soon."  A copy of the

"signed amendment 2" referenced herein was not found during my review of the aforementioned

records and is being sought as part of this search warrant.

22.     On or about September 02, 2011, WILLIAMS, using email account

maryw@aeroplatecorp.com, sent an email with the subject "Invoicing for August" to a VA

employee ("VA Employee Number 1") for approval.  Attached to the email were four ".pdf"

documents, including two Contract Progress Reports ("CPR") and two signature pages, signed

5

by WILLIAMS, for contract number VA 244-C-1453. The first CPR was for Bid Item #2, Small Addition at Community Living Center. The value of the work installed in this period for Bid Item #2 was listed by Aeroplate as $57,930. The second CPR was for Bid Item #8, Renovate 1st and 2nd Floors @ CLC. The value of the work installed in this period for Bid Item #8 was listed by Aeroplate as $67,292. A review of VA records, as well as Aeroplate bank records, indicated that the VA made two payments to Aeroplate in the amounts of $57,930 and $67,292 on or about September 16, 2011.

23.     On or about September 12, 2011, WILLIAMS, using email account maryw@aeroplatecorp.com, sent an email to a VA employee ("VA Employee Number 2") and the VA contracting officer about the "CLC Modification." WILLIAMS advised she was "trying to get the status on the modification work completed at the CLC project." WILLIAMS further advised that she needed "the converted mod in order to invoice" the VA. On or about September 14, 2011, VA Employee Number 2 advised WILLIAMS, at email account maryw@aeroplatecorp.com, that "It is now in Final review and should be completed within 2 weeks."

24.     On or about December 2, 2011, WILLIAMS, using email account maryw@aeroplatecorp.com, sent an email to VA Employee Number 1 about "CLC Invoices." WILLIAMS advised VA Employee Number 1 that that CLC invoices "were sent to you 11/29/11. I am attaching them again along with the FAR clause regarding payments to subs and suppliers. I will also be sending you a letter written to [the VA contracting officer] re the mod and these invoices." On or about December 8, 2011, VA Employee Number 1 advised WILLIAMS, at email account maryw@aeroplatecorp.com, that the "Invoices have been approved and are in the process of certification." Attachments for this email were not found

6

during my review of the aforementioned records and are being sought as part of this search warrant.

25.    On or about December 20, 2011, VA Employee Number 1 sent an email to WILLIAMS, at email account maryw@aeroplatecorp.com, and another Aeroplate employee, advising that the "Mod for $176K has been approved."

26.    On or about January 25, 2012, WILLIAMS, using email account maryw@aeroplatecorp.com, sent an email to VA Employee Number 1 and other Aeroplate employees about the "CLC Schedule." In the email, WILLIAMS acknowledged that "We received payment for the outstanding sewer modification on 01.10.12." A review of VA records, as well as Aeroplate bank records, indicated that the VA made a payment to Aeroplate on or about January 9, 2012 in the amount of $176,203.24.

27.    On or about February 7, 2012, the Individual Surety, using email account redicorp@netscape.net, sent an email to the VA contracting officer, and copied WILLIAMS, at email account maryw@aeroplatecorp.com, with the subject: "Request for property release....Aeroplate Bond." The Individual Surety was seeking a response from the VA about his request to release one of the properties being held as security for a Payment Bond. On or about February 14, 2012, the VA contracting officer responded to the Individual Surety and advised: "I am waiting for our Legal Department to give me an answer. None of your request [sic] have been ignored. They are working on them and as soon as I get a response from them I will let you know."

28.    A review of email records contained in the records produced by the VA and Aeroplate during a civil matter indicated that email correspondence between WILLIAMS, using email account maryw@aeroplatecorp.com, and the VA, the Individual Surety, and other

7

Aeroplate employees continued throughout 2012. In addition, there was correspondence between WILLIAMS and the Individual Surety about the CLC project as late as March, 2013.

29.  The above examples outlined in paragraphs 21-27 are used to illustrate only a few examples of WILLIAMS' use of email account maryw@aeroplatecorp.com to conduct Aeroplate business relating to the CLC project, in furtherance of the scheme.

30.  A preservation letter was sent to GoDaddy.com in or about October, 2017 regarding e-mail account maryw@aeroplatecorp.com.

31.  A subpoena dated June 1, 2017 was sent to GoDaddy.com requesting subscriber information for the domain Aeroplatecorp.com. On or about November 28, 2017, the results of that subpoena were received by the United States Attorney's Office, Eastern District of Pennsylvania, and provided to me for review.

32.  A review of GoDaddy.com records indicated that the domain Aeroplatecorp.com was created on June 5, 2009 and expires on June 5, 2020. GoDaddy.com records further indicated that email account maryw@aeroplatecorp.com was created on July 15, 2009.

33.  GoDaddy.com records indicated that email account maryw@aeroplatecorp.com was associated with Email Plan 3, which was described as "Unlimited Business (Unlimited Business Storage) – US Region (recurring)." The "Last Renewal Date" was listed as July 26, 2017, and the "Billing Date" was listed as July 26, 2018.

34.  GoDaddy.com records indicated a receipt for a credit card purchase in the amount of $121.87, dated July 26, 2017, was made in the name of "Mary Williams," for "Email – Unlimited Business (Unlimited Business Storage), as well as "Mini Online Storage (1GB) – Renewal (annual). The shipping and billing information was listed as Mary Williams, Aeroplate Corp, 5741 E. Central Ave, Fresno, CA 93725, email account maryw@aeroplatecorp.com.

8

GoDaddy.com records indicated the following information about this purchase: "Our Charges will appear on their credit card statement in the name 'GODADDY.COM.'"

35.     Based on the GoDaddy.com subscriber information outlined in paragraphs 32-34, I believe GoDaddy.com may still possess historical data relating to email account maryw@aeroplatecorp.com.

36.     Investigating agents have no basis to believe that any of the records to be seized pursuant to this warrant are privileged attorney-client materials. The agents conducting this search will be instructed to be alert for the possibility of finding privileged materials and will be instructed to put aside any records seized in these searches that might arguably fall within the scope of the attorney-client privilege. These documents will then be reviewed by a filter team to assess any privilege and the applicability of the crime-fraud exception.

## BACKGROUND CONCERNING EMAIL

37.     In my training and experience, I have learned that GoDaddy.com provides a variety of on-line services, including electronic mail ("email") access, to the public. GoDaddy.com allows subscribers to purchase domain names, offers cloud and hosting services, and email account services like the email account listed in Attachment A. Therefore, the computers of GoDaddy.com are likely to contain stored electronic communications (including retrieved and unretrieved email for GoDaddy.com subscribers) and information concerning subscribers and their use of GoDaddy.com services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

9

38.    In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering a domain or setting up an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provides clues to their identity, location or illicit activities.

39.    In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

40.    In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically

10

retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

## CONCLUSION

41.     Based on the above information, I request that the Court issue the proposed search warrant. Because the warrant will be served on GoDaddy.com, LLC, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

STEVEN C. BAKER
Special Agent
Federal Bureau Of Investigation

Subscribed and sworn to before me on January ____ / 7 ____, 2018

HONORABLE THOMAS J. RUETER
UNITED STATES MAGISTRATE JUDGE

11

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with email account

maryw@aeroplatecorp.com, **during the period from July 1, 2010 to March 31, 2013,** that is

stored at premises, or in the "cloud," controlled by GoDaddy.com, LLC, a company that accepts

service of legal process at legal@godaddy.com and/or compliancemgr@godaddy.com.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by GoDaddy.com, LLC (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on or about October 30, 2017, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the originating IP address associated with each email sent from the account, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      The types of service utilized;

d.      All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.      All records pertaining to communications between the Provider and any person

regarding the account, including contacts with support services and records of actions taken.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of 18 U.S.C. §§ 1031 for each account or identifier listed on Attachment A, **during the period from July 1, 2010 to March 31, 2013,** and pertaining to the following matters:

(a) Records relating to any of the following:

      a.  Communications regarding planning, preparation and in furtherance of the scheme;

      b.  Originating IP addresses for emails sent by maryw@aeroplatecorp.com;

      c.  Any correspondence to, from, or involving Mary WILLIAMS with AEROPLATE employees, or individuals, contractors or subcontractors working with AEROPLATE, regarding the Department of Veterans Affairs CLC project;

      d.  Any correspondence to, from, or involving Mary WILLIAMS with Department of Veterans Affairs employees, regarding the Department of Veterans Affairs CLC project;

      e.  Any correspondence to, from, or involving Mary WILLIAMS with the Individual Surety, regarding the Department of Veterans Affairs CLC project;

      f.  Lists of records and/or invoices of vendors working with, or for, Aeroplate on the Department of Veterans Affairs CLC project;

      g.  Any and all business records relating to WILLIAMS or AEROPLATE, any business entity owned or operated by WILLIAMS, or any business

3

entity employing WILLIAMS, regarding the Department of Veterans Affairs CLC project;

h.  Any and all contracts, correspondence, and attachments, to, from or involving Mary WILLIAMS and her employees, contractors or subcontractors, relating to the Department of Veterans Affairs CLC project.

i.  Any record containing bank records, checks, cashier's checks, money orders, personal checks, cash receipts, or other financial instruments or documents related to the Department of Veterans Affairs CLC project.

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) Evidence identifying the person(s) who provided copies of cancelled checks and a cashier's check purporting to show full payment of the bond premium.

4

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by GoDaddy.com, LLC, and my official title is _____. I am a custodian of records for GoDaddy.com, LLC  I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of GoDaddy.com, LLC, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b. such records were kept in the ordinary course of a regularly conducted business activity of GoDaddy.com, LLC; and

c. such records were made by GoDaddy.com, LLC as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____     _____

Date                                                    Signature